IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEIRDRE PIPPINS,                )
                                )
         Plaintiff,             )
                                )
    v.                          )          1:20-CV-65
                                )
AUTOMONEY, INC.,                )
                                )
         Defendant.             )

**MEMORANDUM OPINION AND ORDER**

Loretta C. Biggs, District Judge.

Before the Court are three motions: A Motion to Dismiss filed by Defendant, AutoMoney, Inc., ("Defendant"), (ECF No. 9), and Motions for Remand and Jurisdictional Discovery, (ECF Nos. 6; 15), filed by Plaintiff, Deirdre Pippins, ("Plaintiff"). For the reasons stated below, Plaintiff's Motion to Remand will be granted. Defendant's Motion to Dismiss and Plaintiff's Motion for Jurisdictional Discovery will be denied as moot.

### I.   BACKGROUND

Plaintiff originally filed her complaint in the North Carolina Superior Court for Guilford County on September 16, 2019. (ECF No. 2.) The complaint alleges that "Defendant loaned Plaintiff a sum of money at an annual interest rate that far exceeds the lawful rate of interest" in violation of North Carolina's Consumer Finance Act, N.C. Gen. Stat. § 53-165, *et seq.* (*See id.* ¶¶ 14, 20.) Plaintiff further alleges that she "has been damaged . . . in the amount of $34,423.62." (*Id.* ¶ 22.) In her brief, Plaintiff claims that this figure represents Plaintiff's claim for $26,975 in compensatory damages and $7,448.62 for "the

elimination of an unpaid loan balance. . . which Defendant claims [it is owed]" by Plaintiff. (ECF No. 7 at 2.)  Plaintiff further states that the amount in controversy in her action "does not exceed the sum or value of $75,000, exclusive of interest and costs."  (ECF No. 2 at 6.)

On January 21, 2020, Defendant removed the matter to this Court, asserting jurisdiction based on diversity of citizenship and an amount in controversy exceeding $75,000 pursuant to 28 U.S.C. § 1332.  (ECF No. 1 at 1, 5, 10.)  Plaintiff now moves to remand this case on the grounds that Defendant's removal was untimely and that the amount in controversy requirement is not satisfied.  (ECF No. 6 at 1.)  Plaintiff also "moves the Court for an Order pursuant to 28 U.S.C. § 1447(c) taxing Defendant with the costs and attorneys' fees incurred by Plaintiff as a result of removal."  (*Id.*)

## II. MOTION TO REMAND

### A. Legal Standard

Removal based on diversity is appropriate where the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.  *See, e.g.*, *Dash v. FirstPlus Home Loan Tr. 1996-2*, 248 F. Supp. 2d 489, 495 (M.D.N.C. 2003) (citing 28 U.S.C. § 1332(a)).  It is the burden of the party seeking removal to demonstrate that these elements are met.  *Strawn v. AT&T Mobility LLC,* 530 F.3d 293, 296 (4th Cir. 2008).  A case improperly removed from state to federal court must be remanded.  28 U.S.C. § 1447(c); *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 200 (4th Cir. 2008).  Moreover, "[b]ecause removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction" and remand whenever "federal jurisdiction is doubtful."  *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

"When removal is based on diversity . . . [the] amount-in-controversy requirement must be met." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83–84 (2014). "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Id.* at 84 (citing 28 U.S.C. § 1446(c)(2)); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013). However, if the amount claimed by the plaintiff is not claimed in good faith, or "[w]hen the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *See Dart Cherokee*, 574 U.S. at 84; *Emrit v. Am. Commc'ns Network, Inc.*, No. 1:13-cv-00776, 2014 WL 5389910, at *1 (M.D.N.C. Apr. 2, 2014) ("The black letter rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith." (internal quotations omitted)). Where a defendant's notice of removal alleges an amount in controversy and the plaintiff contests it, the district court "decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88; *see also Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017). Under this standard, the removing party "must show that it is more likely than not that the amount in controversy satisfies the jurisdictional limit." *McCurdy v. Mountain Valley Pipeline, LLC*, 105 F. Supp. 3d 606, 609 (S.D. W. Va. 2015) (internal quotations omitted).

**B. Discussion**

Here, there is no dispute that the parties are diverse—Plaintiff is a citizen of North Carolina and Defendant is a citizen of South Carolina. (ECF No. 2 at 1.) Plaintiff does, however, contest that Defendant's removal was timely and that the amount in controversy in

3

this case exceeds $75,000. (ECF No. 7 at 3.) The Court need not consider whether Defendant's removal was timely because, as explained below, Defendant has not carried its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Plaintiff's complaint seeks $34,423.62 in damages, and she has stated in her briefing before this Court that she will not seek a greater recovery upon remand by, for example, pursuing punitive damages, attorneys' fees, or an Unfair and Deceptive Trade Practices Act ("UDTPA") claim.[1] (*See* ECF Nos. 2 at 6; 7 at 8–9; 18 at 3.) This is strong evidence that the amount in controversy in this case does not exceed the jurisdictional threshold because, as explained above, if "the plaintiff's complaint . . . demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee*, 574 U.S. at 84 (quoting 28 U.S.C. § 1446(c)(2)). Defendant, however, argues that Plaintiff's complaint has not asserted the amount in controversy in good faith and therefore that it should not control, allowing Defendant to allege its own amount in controversy to be proven by a preponderance of the evidence. (*See* ECF No. 17 at 3–6.) Citing a Fifth Circuit case, *De Aguilar v. Boeing Co.*, Defendant argues that "[i]n the circumstances of removal, bad faith simply means pleading damages in an amount less than $75,000.00 to evade jurisdiction with the knowledge the clam is worth more." (*See id.* at 3 (citing 47 F.3d 1404, 1410 (5th Cir. 1995)).)

---

[1] For instance, in her brief in support of remand, Plaintiff states she "is not seeking and will not seek any other damages." (ECF No. 7 at 8.) She continues: "[i]f it were the intent of Plaintiff to assert claims for treble damages, punitive damages[,] and attorneys' fees in this action[,] she most assuredly would have included those claims in her Complaint." (*Id.* at 9.) Likewise, in her reply brief, Plaintiff asks the Court to reject as "speculation and conjecture" Defendant's theory that "Plaintiff will attempt to take actions she has represented to the Court she will not take," i.e., seek an award in excess of $75,000. (ECF No. 18 at 4–5.)

4

It thus appears to be Defendant's contention that where, as here, a plaintiff "is not bound by the amount pleaded in [their] prayer for relief" and has not stipulated that their claim is worth less than $75,000, a defendant may claim the plaintiff is acting in bad faith, thereby eliminating the traditional deference afforded to a plaintiff's complaint and giving the defendant the opportunity to demonstrate by a preponderance of the evidence that the jurisdictional threshold is met. (*See id.* at 3–6.) As *De Aguilar* carries some degree of persuasive value here, it may be worth articulating what the case holds.

In *De Aguilar*, the Fifth Circuit stated that because the "majority of states . . . do not limit damage awards to the amount specified in the *ad damnum* clause of [a] state pleading," the jurisdictional inquiry "does not end merely because the plaintiff alleges damages below the threshold." 47 F.3d at 1410. Furthermore, the court stated that "[t]he face of the plaintiff's pleading will not control if made in bad faith" and that a plaintiff acts in bad faith when they attempt to "manipulat[e]" jurisdiction by "plead[ing] for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more [and] that they may be able to evade federal jurisdiction" as a result. *Id.* Thus, the court held that a "plaintiff's [jurisdictional] claim remains presumptively correct *unless* the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount."[2] *Id.* at 1412 (emphasis added).

---

[2] If the defendant makes that showing, *De Aguilar* holds that federal jurisdiction is proper unless the plaintiff can then show it is "certain that he [could not] recover more than the damages for which he prayed in the state court complaint." *Id.* at 1411.

5

The Fourth Circuit does not appear to have squarely addressed *De Aguilar* nor specifically addressed what constitutes bad faith in pleading an amount in controversy. *See Hamilton v. OSI Collection Servs., Inc.*, No. 2:10-CV-1740-MBS, 2010 WL 4226016, at *2 (D. S.C. Oct. 20, 2010) (noting that "[t]he Fourth Circuit has yet to squarely address the issue" of whether courts should permit removal where a complaint provides an express limitation on damages but the defendant produces evidence establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000). This Court, however, does note that in an unpublished 2005 decision, the Fourth Circuit cited *De Aguilar*, observing that some courts have required "plaintiffs seeking to defeat removal jurisdiction" to file a "binding stipulation or affidavit with their complaints" that restricts their eligibility for damages above $75,000. *See Aikens v. Microsoft Corp.*, 159 F. App'x 471, 475–76 (4th Cir. 2005); *see also Dash*, 248 F. Supp. 2d at 497–98 (citing favorably to *De Aguilar*).[3]

Nevertheless, even if the Court were to find *De Aguilar* persuasive, that case does not relieve Defendant of the burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $75,000. Here, on one hand, Plaintiff explicitly seeks $34,423.62 in damages and has explicitly averred that she will not seek additional damages if this action is remanded to state court. On the other, Defendant contends that because Plaintiff has not filed a binding stipulation promising not to accept more than $75,000 if so awarded,

---

[3] In *Dash*, a court in this district held that "[w]hen the amount of damages a plaintiff seeks is unclear," the Court can look to the "entire record" to determine whether the defendant has demonstrated by a preponderance of the evidence that the jurisdictional threshold is met. *See* 248 F. Supp. 2d at 497–98. However, *Dash*, unlike the present action, involved removal where "the plaintiff . . . made an unspecified claim for damages under state law." *See Bartnikowski v. NVR, Inc.*, No. 1:07CV00768, 2008 WL 2512839, at *2 (M.D.N.C. June 19, 2008). Thus, *Dash* is not on all fours with the instant case.

(*see* ECF No. 17 at 5), and because North Carolina law "permits a plaintiff to recover in excess of the amount pled in [her] complaint," *Dash*, 248 F. Supp 2d at 497, n.6, the Court should infer that Plaintiff is plotting to "assert additional claims" once safely back in state court, so that the amount in controversy here actually exceeds $75,000.[4] (*See* ECF No. 1 ¶¶ 13–22.) As discussed below, the evidence Defendant marshals to support this argument is too weak to establish by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000.

Defendant's first and strongest piece of evidence is that Plaintiff has not stipulated to receiving less than $75,000 if this action is remanded. (ECF No. 1 ¶ 13.) While some district courts in this circuit consider such evidence, *see, e.g.*, *Burnette v. Red Roof Inns, Inc.*, No. 1:19-cv-320-MOC-WCM, 2020 WL 697831, at *3 (W.D.N.C. Feb. 11, 2020); *Stogsdill v. Spears*, No. 2:19-cv-00440, 2019 WL 4230665, at *2 (S.D. W. Va. Sept. 5, 2019), others view complaints as a "much more reliable indicator of the amount in controversy," *see Chek v. State Farm Fire & Cas. Co.*, No. 5:13-CV-378-JG, 2014 WL 12680676, at *4 (E.D.N.C. Mar. 17, 2014); s*ee also Bell v. Qwest Commc'ns Int'l, Inc.*, No. 8:11-00037-HHF, 2011 WL 2601566, at *5 (D.S.C. June 30, 2011) ("A plaintiff's refusal to stipulate to maximum damages does not establish that the claim exceeds $75,000. At best, it provides a tenuous and hypothetical inference."). Furthermore, "Defendant has not identified any applicable law that requires a plaintiff to make such a stipulation, nor is the Court aware of any case that holds such a stipulation is necessary." *Kirklen v. Buffalo Wild Wings Int'l, Inc.*, No. 3:18-cv-00468-FDW-DSC, 2019 WL 1649984, at *2

---

[4] Plaintiff's request for $26,975.00 in compensatory damages, if trebled, would result in $80,925.00 in damages. (*See* ECF No. 17 at 6.)

(W.D.N.C. Apr. 17, 2019). Thus, this factor weighs only slightly in favor of finding that the amount in controversy exceeds $75,000.

Defendant's second piece of evidence is that Plaintiff has filed similar claims in state court against other lenders alleging that "the same conduct at issue [in this case] constituted violations of [the UDTPA] and North Carolina usury law . . . entitl[ing] [Plaintiff] to treble damages, attorneys' fees and costs, and punitive damages." (ECF No. 17 at 5–6.) Plaintiff has indeed sued other lenders who, like Defendant, offer high-interest car-title loans. (*See* ECF Nos. 1-8 ¶¶ 4, 21; 1-9 ¶¶ 4, 22.) In these state court suits, Plaintiff and her co-plaintiffs have alleged violations of the North Carolina Consumer Finance Act—the act at issue here—as well as the UDTPA and North Carolina usury law. (*See* ECF Nos. 1-8 ¶¶ 20–36; 1-9 ¶¶ 21–33.) The Court is not at all sure, however, that the existence of these cases helps Defendant's argument. In calculating the amount in controversy, courts in this circuit may consider the "amounts awarded in similar cases." *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 962 (S.D. W. Va. 2011). However, for a case to be similar, it must allege the same cause of action—otherwise, courts are comparing apples and oranges. *See Kirklen*, 2019 WL 1649984, at \*2 (finding that defendant had not proven the amount in controversy exceeded $75,000 where the ostensibly similar cases defendant analogized its case to did not "even allege the same cause of action"). Furthermore, Defendant provides no caselaw or other persuasive support for its argument that *this* plaintiff is uniquely likely to add a UDTPA claim on remand because she has brought UDTPA claims in other lawsuits. The Court understands why Plaintiff's past litigation strategies might foreshadow her future actions. However, one can just as easily conclude that where a plaintiff who clearly knows how to make a UDTPA claim elects not to bring one in a

new lawsuit, she is particularly unlikely to add one later. The Court therefore finds that Plaintiff's history of bringing more expansive claims against other car-title lenders does not suggest that the amount in controversy in this case exceeds $75,000.

Next, in a variation on Defendant's second argument, Defendant contends that because Plaintiff's counsel has filed other actions against Defendant and other car-title lenders seeking treble damages, attorneys' fees, and punitive damages, the actual amount in controversy in this case exceeds $75,000. (*See* ECF No. 1 ¶¶ 17, 19, 22.) Once again, Defendant provides no authority supporting its proposition that a law firm's history of bringing a claim on behalf of one party makes it more likely to bring that claim again on behalf of a second party where the second party has already consciously chosen not to bring the claim and has disavowed any intent to bring it in the future. Accordingly, the Court assigns no weight to the previous decisions taken by past litigants represented by Plaintiff's counsel.

In sum, Defendant has provided relatively weak evidence that the claim that Plaintiff values at $34,423.62 is actually worth more than $75,000 and thus sufficient to meet the jurisdictional threshold here. Considering the evidence before it, and mindful of the fact that our federal system demands courts remand where federal jurisdiction is doubtful, *Mulcahey*, 29 F.3d at 151, the Court concludes that Defendant has failed to demonstrate by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. Plaintiff's Motion to Remand must therefore be granted.

### III.   ATTORNEYS' FEES

Plaintiff also requests in her Motion to Remand that attorneys' fees be awarded pursuant to 28 U.S.C. § 1447(c). (ECF Nos. 6 at 1; 7 at 9–11.) Section 1447(c) provides that

9

"[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has explained that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case," but a court's "reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* at 141 (internal quotations omitted). These purposes include "deter[ring] removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140. The court need not find bad faith by the movant in order to award fees under § 1447(c). *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996).

Although Defendant's arguments were unsuccessful and relatively weak as indicated above, the Court does not find that they were objectively unreasonable. Accordingly, Plaintiff's request for attorneys; fees and costs will be denied.

For the reasons stated herein, the Court enters the following:

**[ORDER TO FOLLOW ON NEXT PAGE]**

## ORDER

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand, (ECF No. 6), is GRANTED. This case shall be REMANDED to the General Court of Justice of North Carolina, Guilford County Superior Court Division. The parties shall bear their own costs related to removal and remand.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss, (ECF No. 9), and Plaintiff's Motion for Jurisdictional Discovery, (ECF No. 15), are DENIED as moot.

This, the 7th day of April 2020.

/s/Loretta C. Biggs
United States District Judge